# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION H-14-130 |
| v. | § | |
| | § | CIVIL ACTION H-16-2073 |
| AMON RWEYEMAMU MTAZA | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Amon Rweyemamu Mtaza, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket Entry No. 121.) The Government filed a motion to deny relief (Docket Entry No. 139), to which Defendant filed a response (Docket Entry No. 146).

Having considered the motions, the response, the record, and the applicable law, the Court GRANTS the motion to deny relief and DENIES the motion for section 2255 relief, as follows.

### *Background and Claims*

On September 16, 2014, Defendant pleaded guilty to one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349, one count of wire fraud under 18 U.S.C. § 1343, and two counts of aggravated identity theft under 18 U.S.C. § 1028A. He received concurrent sentences of 63 months for the conspiracy and fraud counts, to be followed by concurrent two-year sentences for the identity theft charges.[1] Defendant also received a three-year term of supervised release. The Court ordered Defendant to pay $400,409.00 in

---

[1]*See United States v. Mtaza*, No. 15-20172 (5th Cir. Nov. 13, 2015).

restitution to the IRS, and ordered the forfeitures of Defendant's 2006 Maserati and 2007 Mercedes motor vehicles. Defendant expressly waived his rights to pursue an appeal and relief under section 2255. Defendant's subsequent challenge to the voluntariness of his plea was rejected by the Fifth Circuit Court of Appeals, and his convictions were affirmed on appeal. *United States v. Mtaza*, No. 15-20172 (5th Cir. Nov. 13, 2015).

In this section 2255 proceeding, Defendant raises numerous claims of ineffective assistance against his four counsel of record: his retained Guilty Plea Counsel, his retained Sentencing Counsel and Co-Counsel, and his appointed Appellate Counsel. The Government has addressed Defendant's claims on a counsel-by-counsel basis, and the Court sees no reason to depart from that approach.

## Legal Standards

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional

magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

### *Ineffective Assistance of Trial Counsel*

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a habeas petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*. at 121–22 (internal quotations omitted). The standard for judging

counsel's representation is a deferential one. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.*

*Guilty Plea Counsel*

Defendant claims that his Guilty Plea Counsel was ineffective in failing to investigate adequately the case, the record, and the law; in concealing records and inculpatory evidence against him; in coercing Defendant to plead guilty instead of requesting a *Franks* hearing and moving to dismiss the groundless charges; in failing to move to suppress illegal evidence or dismiss the defective indictment; and in failing to advise Defendant properly as to pleading guilty or proceeding to trial.

In responding to these claims, Guilty Plea Counsel filed an affidavit with this Court, testifying as follows:

1. I represented Mr. Mtaza from March 6, 2014 until January 15, 2015.

2. I met with Mr. Mtaza on many occasions to discuss the facts and circumstances of his involvement in the facts which led to his arrest and indictment.

3. I discussed the law which applied to the charges against Mr. Mtaza which were contained in his indictment.

4. I discussed the United States Sentencing guidelines with Mr. Mtaza and how the guidelines may apply to [him].

5. Mr. Mtaza was desirous of pleading guilty and cooperating with the government from the beginning of my representation.

6.　　　I met with Postal Inspector Matthew Boyland [*sic*], [the AUSA], [Defendant's immigration counsel], Ms. Upendo Joseph, Mr. Eugene Mtaza, and [Sentencing Counsel] while investigation Mr. Mtaza's case.

7.　　　In my [j]udgment, the facts surrounding Mr. Mtaza's arrest did not lend themselves to a complaint that the arrest was unlawful.

8.　　　There was no basis to contest Mr. Mtaza's arrest and subsequent search of his person.

9.　　　Mr. Mtaza consented to the search of his automobile and apartment so 1 found no basis to challenge the results of the search or seizure of the items found during the search.

10.　　　Ms. Joseph acknowledged that she consented to the search of her apartment so I found no basis to contest the seizure of the items found there.

11.　　　There was, in my opinion, no legitimate basis for a *Franks v. Delaware* hearing.　Moreover since Mr. Mtaza decided to cooperate and debrief, no tactical advantage would flow from such a strategy.

12.　　　I never promised Mr. Mtaza that he would receive probation.

(Docket Entry No. 134.)

"A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction."　*United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993).　A guilty plea also eliminates objections to searches and seizures that violate the Fourth Amendment.　*United States v. Cothran*, 302 F.3d 279, 285–86 (5th Cir. 2002).　Where, as here, a defendant has pleaded guilty and waived his right to file a motion pursuant to section 2255, the only ineffective assistance of counsel claim to survive

the waiver is one claiming the ineffective assistance "directly affected the validity of waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

A guilty plea may be invalid if induced by defense counsel's unkept promises. However, a defendant may not refute his plea hearing testimony given under oath with statements made after conviction. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). It is well established that "[s]olemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

It bears repeating that Guilty Plea Counsel was retained counsel. Despite his numerous complaints at this late juncture, Defendant made no attempt to obtain new counsel and raised no points of dissatisfaction with counsel prior to pleading guilty. Indeed, the plea hearing record shows that Defendant availed himself of the opportunity to ask counsel questions shortly before entering his guilty plea, and was given an opportunity to voice any complaints against counsel. Defendant raised no complaints concerning counsel, his representation, or his advice:

| THE COURT: | Have you had enough time to talk to your attorney in this case? |
|---|---|
| THE DEFENDANT: | Yes, I did. |
| THE COURT: | And are you happy with [counsel] as your attorney? |
| THE DEFENDANT: | Yes, I do [*sic*]. |

| | |
|---|---|
| THE COURT: | Do you need to ask him any questions or get any advice from him before we go on? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | You do? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | You need to talk to him? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Please do. Take your time. Go ahead, [counsel], yeah. |

([Counsel] conferring with Defendant.)

| | |
|---|---|
| [COUNSEL]: | Excuse me just a moment, Your Honor. |
| THE COURT: | All right. |

([Counsel] conferring with Defendant.)

| | |
|---|---|
| [COUNSEL]: | Thank you, Your Honor. |
| THE COURT: | All right. Now, during the course of the hearing if you need to ask your lawyer a question or get advice from him, you can do that at any point prior to answering my questions. Do you understand that? |
| THE DEFENDANT: | Okay, sir. |
| THE COURT: | All right. Now, [counsel], have you had enough time to investigate the law and the facts of your client's case? |
| [COUNSEL]: | Yes, I have, Your Honor. |

| THE COURT: | And are you satisfied that your client understands the charges against him and the range of punishment he faces in this case? |
| --- | --- |
| [COUNSEL]: | Yes, I am, Your Honor. |
| THE COURT: | Has he been able to fully cooperate with you? |
| [COUNSEL]: | He has cooperated with me every step of the way, Your Honor. |
| THE COURT: | All right. And in your opinion, is he mentally competent to enter a plea of guilty in this case? |
| [COUNSEL]: | In my opinion, he is mentally competent to do so, Your Honor. |
| THE COURT: | All right. Thank you. |

(Docket Entry No. 102, pp. 5–6.)

The Court further advised Defendant on the record as to the applicable sentencing ranges and provisions of the written plea agreement, to which Defendant acknowledged his understanding.  Defendant acknowledged his understanding that he would be sentenced at a later date, and that he would not know his actual sentence until that time.  *Id*., p. 21.  This Court made clear that it was not bound by any agreements or understanding Defendant may have reached with the Government.  *Id*.  Moreover, the Court made clear that it was not bound by any sentencing expectations or opinions counsel may have expressed:

| THE COURT: | Now, I'm sure you've probably talked to [counsel] about the guidelines and how they may work in your case; is that right? |
| --- | --- |
| THE DEFENDANT: | Yes, sir. |

| | |
|---|---|
| THE COURT: | All right. Well, whatever he has told you about the Sentencing Guidelines and how they may work in your case, perhaps he's even give you an indication of what he thinks your sentence might ultimately be in this case, all of that is simply his best estimate of what's going to happen in the case based on his experience, but *it is not a promise or a guarantee of any kind from [counsel] about your sentence*. You understand that? |
| THE DEFENDANT: | Yes, sir. |

*Id.*, pp. 24–25 (emphasis added). The record also refutes Defendant's claim that Guilty Plea Counsel promised him he would receive probation if he pleaded guilty, or that counsel coerced him into pleading guilty with promises of certain outcomes:

| | |
|---|---|
| THE COURT: | No one has made you any promises or guarantees about your sentence, have they? |
| THE DEFENDANT: | Yes, sir, no. |
| THE COURT: | No one has? |
| THE DEFENDANT: | No. |
| THE COURT: | Is that correct? |
| THE DEFENDANT: | Yes, sir. |

*Id.*, p. 25. Defendant also stated on the record that his plea was being made freely and voluntarily, and that no one had threatened or coerced him:

| | |
|---|---|
| THE COURT: | All right. Thank you. Now, I need to ask you, what is your plea to the charges against you in Counts 1, 2, 8, and 9, guilty or not guilty? |

THE DEFENDANT:        Guilty, sir.

THE COURT:            And are you making this plea of guilty to Counts 1, 2, 8, and 9 freely and voluntarily?

THE DEFENDANT:        Yes, sir.

THE COURT:            Do you state here in open court, under oath, that each and every allegation in Counts 1, 2, 8, and 9 of the indictment are true and correct?

THE DEFENDANT:        Yes, sir.

THE COURT:            Has anyone forced you, threatened you, coerced you, or done any violence to you or any other person to get you to plead guilty in this case?

THE DEFENDANT:        No, sir.

THE COURT:            Are you pleading guilty because of any promise that's been made to you by anyone other than what is contained here in this written plea agreement?

THE DEFENDANT:        No, sir.

THE COURT:            Are you pleading guilty to protect someone else?

THE DEFENDANT:        No, sir.

THE COURT:            Are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT:        Yes, sir.

THE COURT:            All right. Have you read and do you understand the plea agreement in this case?

THE DEFENDANT:        Yes, sir.

THE COURT:          And are you prepared to sign it under oath at this time?

THE DEFENDANT:      Yes, sir.

*Id*., pp. 28–29.  Defendant's claims as to investigation, suppression, a defective indictment, pretrial hearings and motions, evidentiary issues, and promises of probation are refuted by his testimony at the plea hearing.  Defendant's self-serving post-conviction statements are insufficient to surmount his testimony made on the record and in open court at the plea hearing.

Regardless, Defendant's *Franks* hearing claim has no merit.  In *Franks v. Delaware*, the Supreme Court established parameters for when a defendant is entitled to a hearing to challenge the validity of statements made in an affidavit supporting a search warrant.  438 U.S. 154 (1978).  A *Franks* hearing is part of a defendant's right to seek suppression of evidence obtained in violation of the Fourth Amendment.  But here, Defendant does not contend that Guilty Plea Counsel should have pursued a *Franks* hearing to contest a search warrant; because Defendant and his girlfriend consented to the searches, there was no search warrant.  Guilty Plea Counsel testified in his affidavit that, "[t]here was, in my opinion, no legitimate basis for a *Franks v. Delaware* hearing.  Moreover since Mr. Mtaza decided to cooperate and debrief, no tactical advantage would flow from such a strategy."  Defendant does not show that, had counsel requested a *Franks* hearing, the motion would have been granted and that a *Franks* hearing would have been successful.  Defendant establishes neither

deficient performance nor actual prejudice under *Strickland*. In any event, the claim was waived by Defendant's guilty plea.

Moreover, Defendant does not establish that, had counsel objected to the indictment and moved to suppress evidence, that the objections and motions would have been granted and that the outcome of his trial would have been different. His conclusory allegations of improper charges and unlawful evidence are unsupported in the record and warrant no relief. Regardless, the claims were waived by Defendant's guilty plea.

Equally conclusional and unsupported in the record is Defendant's assertion that Guilty Plea Counsel was bribed with Defendant's Range Rover in exchange for coercing him to plead guilty and sign the plea agreement. However, the plea agreement and forfeiture proceedings did not include a Range Rover motor vehicle, and Defendant does not show that he lost any interest in, or title to, a Range Rover motor vehicle as a result of his guilty plea. The forfeiture proceedings clearly limited the subject vehicles to a Maserati and a Mercedes motor vehicle.

Defendant also raises several generalized arguments asserting that Guilty Plea Counsel was ineffective in this case because his license to practice law was subsequently suspended for misconduct in other cases. It is undisputed that Guilty Plea Counsel's license had not been suspended as of Defendant's plea hearing, and that counsel's misconduct was

in no way related to Defendant's case.[2]  Defendant does not show that counsel's subsequent license suspension constitutes grounds for habeas relief in this case.

In all respects, Defendant's claims for ineffective assistance as to Guilty Plea Counsel are without merit, and habeas relief under section 2255 is unwarranted.

*Sentencing Counsel and Co-Counsel*

Defendant claims that his Sentencing Counsel and Co-Counsel were ineffective in failing to investigate adequately the case, the record, and the law; in failing to move to withdraw the guilty plea pursuant to his "instructions"; and in failing to object to the loss and victims enhancement as set out in the PSR.

Sentencing Counsel and Co-Counsel each filed an affidavit responding to Defendant's claims.  Sentencing Counsel testified, in relevant part, as follows:

> Allegation: failure to file Defendant's motion to withdraw plea[:]
>
> In late January 2015, I initially met with Ms. Upendo Joseph, the Defendant's girlfriend who had been recommended to me by [an immigration lawyer] who was assisting Mr. Mtaza.  During our conversations, she inquired about the possibility of withdrawing Mr. Mtaza's plea of guilty to the charges against him.  I made it abundantly clear to her that I would not accept representation if it involved an attempt to withdraw his plea.  I also informed her that that would be difficult to do since [judges] are very careful to make sure [defendants] are pleading guilty freely, knowingly, and voluntarily.  I never told Ms. Joseph that I would file a motion to withdraw his plea, nor was her hiring of me contingent on that premise.  We both agreed that I would discuss any issues with [Guilty Plea Counsel] and Mr. Mtaza.

---

[2]Defendant's guilty plea hearing was held on September 16, 2014.  Public records for the State Bar of Texas show that counsel's license was suspended from January 15, 2015, to January 14, 2016.

Several days after our initial meeting, Ms. Joseph formally retained my services. I contacted my friend of fifteen (15) years, [Co-Counsel], to see if he would assist me in representing Mr. Mtaza. I explained to [Co-Counsel] that the Defendant had already plead guilty to four (4) counts and that his current lawyer, [Guilty Plea Counsel], had been suspended and/or disbarred from the practice of law. [Co-Counsel] readily agreed and we embarked on contacting [Guilty Plea Counsel] to obtain the discovery he had pertaining to the case. We met with [him] in his office and procured any and all discovery and had a lengthy discussion with him regarding the case. We also broached the subject of the Defendant's plea and inquired whether there was anything that warranted us filing a Motion to Withdraw Mr. Mtaza's plea. [Guilty Plea Counsel] acknowledged that he felt that the Defendant's plea was freely, knowingly, and voluntarily given.

[Co-Counsel] and I then journeyed to the Joe Corley Detention Facility to meet with Mr. Mtaza. We spent an inordinate amount of time with him discussing in great detail all aspects of his case. We showed him a copy of his Plea Agreement. He inquired about the possibility of withdrawing his plea since [Guilty Plea Counsel] had now been disbarred. [We] made it abundantly clear that that fact alone was no basis to file said motion. It was explained to him that at the time of his plea, [Guilty Plea Counsel] had not yet been sanctioned by the State Bar. At no time did the Defendant ever mention that [Guilty Plea Counsel] had coerced him into pleading guilty. Our advice to him was that he would not prevail on a [m]otion to withdraw his plea and the Defendant never raised that issue again. Our subsequent meeting and conversations dealt largely with the sentencing guidelines and whether we would file any objections to the Pre-Sentence Report. Mr. Mtaza already had a copy of the PSR, which we reviewed with him.

In my next meeting with Ms. Joseph, I explained to her that after having examined all of the evidence surrounding Mr. Mtaza's plea, that there was no basis under which we would pursue a [m]otion to withdraw said plea. She informed me that she fully understood and that Mr. Mtaza had also recognized that there was no basis to pursue that course of action. This issue was never raised again by the Defendant or his girlfriend.

The Defendant alleges that he was somehow "tricked into believing that they would effectively represent him to withdraw his plea of guilty, when instead, they had no intention whatsoever to do so." There was no trick or coercion

involved.  During our first meeting, he inquired about the possibility of withdrawing his plea, but it was as if he had something to gain from [Guilty Plea Counsel's] unfortunate circumstances.  In the final analysis, he followed our advice and focused on the issues of sentencing, objections to the PSR and his allocution to this Court.

<u>Ineffective Assistance of Counsel</u>:

We met with the Defendant on three (3) separate occasions at the Joe Corley Detention Facility.  The second and final meetings concentrated on what objections we would make to the PSR, what the Defendant would say to the Court and the appropriate guideline range.  We never promised the Defendant what sentence he would receive.  That allegation is totally and patently false.  The last meeting on 2 March 2015 centered on the Defendant's acceptance of responsibility statement and the objection(s) we would be making to the Court.  We informed him that the PSR was erroneous in the total offense level of 31 and that he should receive a 3 point reduction for acceptance of responsibility.  He was also told that if the Court granted this objection, his new total offense level would be 28.  The guideline range would then be 78-97 months.  At no time was he told that he would receive 63 months imprisonment.  As any Federal Court Judge is well aware, no competent attorney would dare promise a certain sentence to a defendant.  Certainly not a sentence below the guideline range calculated in a PSR.

<u>Prejudice: failure to move for suppression of evidence</u>:

When I was formally retained by the Defendant's girlfriend, the Defendant had already pled guilty to four (4) counts of a nine (9) count Indictment.  Our goal was to derive the lowest possible sentence for him.  [We] met with [Guilty Plea Counsel], spoke to the [AUSA], Special Agent Boyden and procured all of the discovery materials.  We thoroughly reviewed the entire discovery and discussed it at length with the Defendant.  I found him to be articulate, smart and engaging.  He asked many questions to which he received answers.  He was at all times kept fully informed about the evidence, process, and goals.  He was never promised anything other than working to obtain the lowest sentence.  He never once complained about anything throughout our representation.  We got along well with him and never encountered any problems.

(Docket Entry No. 132.) Co-Counsel testified, in relevant part, as follows:

> In early February of 2015 I was contacted by my longtime friend and colleague, [Sentencing Counsel], asking if I would like to co-counsel this case with him. The case was somewhat unique in that the Defendant had already plead guilty and all settings for sentencing were already in place. We were informed that his previous counsel [Guilty Plea Counsel] had been disbarred and thus was unable to continue forward in his representation of Mtaza. Once we verified everything we could through PACER, we spoke to the government and also with [Guilty Plea Counsel]. We had an in person meeting with [Guilty Plea Counsel] wherein he released his file to us and we spoke at length about the evidence in the case and his investigation and dealings prior to withdrawing from representation.
>
> The recurring theme in Mtaza's lengthy filings seem to be that I, acting alone, or in concert with [Sentencing Counsel] failed to move for the withdrawal of the Defendant's plea.
>
> > Allegation of failure to investigate the circumstances of the case and examine the records, and then evaluate the ineffectiveness of the previous defense attorney:
>
> Immediately after being retained I contacted the assigned [AUSA] and spoke to her about this case and inquired about Discovery. She immediately agreed to provide us with anything we could not obtain from [Guilty Plea Counsel]. After speaking with her I called the office of [Guilty Plea Counsel] and made an appointment for [Sentencing Counsel] and I to meet with him, discuss the case and obtain the file.
>
> [Sentencing Counsel] and I met with [Guilty Plea Counsel] and spoke at length about the facts and circumstances of the allegations, his investigation, the plea agreement, the decision to plead, the voluntariness of the plea and the future sentencing dates, as well as the PSR.
>
> > Allegation of failure to move for withdrawal of Defendant's guilty plea:
>
> From the onset of our representation, we made it very clear that we were not going to accept employment if it involved attempting to withdraw the plea. This was made clear at our first meeting with Mtaza and he understood and

16

accepted the same. We also made the same very clear to Ms. Joseph. We discussed at length how he had knowingly and voluntarily accepted his plea and the mere fact that his attorney became disqualified from further representation, in no way undermined the work that had been done and the facts and circumstances surrounding Mtaza's plea.

The claim that we were hired specifically to withdraw his plea of guilty is simply false. [Sentencing Counsel] and I received no information from Mr. Mtaza to suggest that his plea agreement had not been freely and voluntarily entered into. We are also certain that the Court, in the normal course of accepting a plea, took measures to ensure that the Defendant was making his plea intentionally, knowingly, and voluntarily. Furthermore, had Mr. Mtaza wished to withdraw his plea, or express his dissatisfaction with counsel at sentencing, he had every right to do so during his allocution at sentencing.

In his affidavit, Mtaza acknowledges that in our first meeting we told him we would not move to withdraw his plea; but he attempts to make it sound as if we coerced him into doing so. If, in fact, we had been hired to withdraw his plea and upon our very first meeting with him he learned we would not do it, why did he continue on with us as counsel? Clearly, he had the opportunity to hire someone else, or communicate with Ms. Joseph and explain that we refused to follow his wishes and ask her to address the issue with us. None of that was done because that was never the course of action that was planned.

I cannot recall, word for word, exactly what language was used by the Court at sentencing but usually the Court will ask the Defendant if he or she has any objections to the PSR not addressed by his Counsel. If the Court did inquire in this case, Mr. Mtaza clearly had the opportunity to address the objections he has now adopted.

> Allegation that we failed to move for suppression or require additional evidence from the government:

At the point that we came into the representation of Mr. Mtaza, he had already plead guilty, already received a PSR, and was merely waiting for sentencing. All Discovery had been reviewed with prior counsel, and [Sentencing Counsel] and I were merely hired to continue on with sentencing in an attempt to derive the lowest sentence possible. We did indeed go through discovery, verify information, speak with the government, speak with Agent Boyden, investigate the matters that needed investigation and ultimately prepare for sentencing.

> Neither of us ever promised Mtaza any sentence. Our only promise to Mtaza was that we would seek the lowest sentence possible.
>
> Mtaza makes various arguments, the logic of which I cannot follow and thus am unable to respond as written.

(Docket Entry No. 131.)

It again bears repeating that Defendant's three trial attorneys – Guilty Plea Counsel, Sentencing Counsel, and Co-Counsel – were retained counsel. Defendant contends after the fact and at this late time that Sentencing Counsel and Co-Counsel agreed to seek withdrawal of the guilty plea, then reneged on that agreement. Defendant provides no explanation for going forward with Sentencing Counsel and Co-Counsel after they purportedly refused to follow Defendant's "instructions" to withdraw the plea.

Regardless, Defendant does not establish that, had counsel moved to withdraw the guilty plea, this Court would have granted the motion. Generally speaking, it is not the practice of this Court to grant motions to withdraw guilty pleas. Defendant has not shown in this proceeding any meritorious grounds which would have convinced this Court to allow him to withdraw his plea. Consequently, Defendant does not establish actual prejudice under *Strickland*, and ineffective assistance of counsel is not shown.

Defendant's generalized assertions of counsels' failures to investigate the case, the record, and the law, are conclusory and unsupported in the record. Moreover, Defendant fails to establish what additional investigation or research was necessary, what results it would have produced, and how it would have benefitted the defense. In the context of

sentencing, a petitioner must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004). Defendant in this case fails to show that, but for counsels' allegedly deficient investigation and research, there is a reasonable probability that he would have received less time in prison.

Nor does Defendant establish ineffective assistance of counsel as to counsels' purported promise of a 63-month sentence. Defendant was given an opportunity to speak on his own behalf during allocution at the sentencing hearing. The hearing record shows that Defendant utilized his allocution to apologize for his criminal actions and to assure the Court that he had "learned his lesson." He acknowledged to the Court that "I know my life is in your hand and I just want to ask you to be lenient to me so that I can go out and be a father to my kids and a husband to my wife." (Docket Entry No. 103, p. 9.) At no point during the hearing did Defendant complain that he had been promised a 63-month sentence or that he wanted to withdraw his guilty plea. Defendant's statements, allocution, and conduct at the sentencing hearing were not those of a defendant who believed he had been "abandoned" by his sentencing counsel.

Defendant's other claims for ineffective assistance likewise lack merit. Defendant complains that counsel did not object to the PSR's application of sentence enhancements based on the number of victims and the amount of intended loss. Defendant's challenges to the validity of the PSR's computations are refuted by the record. The $1,846,972.00 loss

amount was contained in the factual basis Defendant agreed to both in the written plea agreement as well as in open court during rearraignment. Consequently, Defendant shows no meritorious grounds upon which counsel could have successfully objected to the 16-level enhancement applied in the PSR based on the amount of intended loss.

Nor did counsel have valid grounds for objecting to the enhancement based on the number of victims. Section 2B1.1(b)(2)(C) of the 2014 Guidelines Manual provides that the offense level should be increased by 6 if the offense "involved 250 or more victims." The term "victim" is defined as "any person who has sustained any part of the actual loss determined under subsection (b)(1)," the latter being the $1,846,972.00 figure. As explained in the PSR, the IRS investigation revealed that Defendant filed fraudulent tax returns and received refunds (totaling $1,846,972.00 in intended losses) for 685 victims over a period of three years. These 685 persons are "aggravated identity theft victims whose means of identification were used unlawfully and without authority." *See* U.S.S.G. § 2B1.1. Although Defendant insists that counsel should have required the Government to present evidence of the more than 250 victims, he does not contend or show that the Government could not have presented such evidence, and no deficient performance is shown. Defendant further fails to show that, but for counsels' failure to object, there is a reasonable probability he would have received less time in prison. *See Grammas*, 376 F.3d at 438. As a result, Defendant establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

In all respects, Defendant's claims for ineffective assistance as to Sentencing Counsel and Co-Counsel are without merit, and habeas relief under section 2255 is unwarranted.

*Appellate Counsel*

Defendant claims that his Appellate Counsel was ineffective in filing a merits brief instead of an *Anders* brief.[3]  According to Defendant, an *Anders* brief would have allowed Defendant to file a *pro se* response brief on appeal raising the numerous complaints he had against his three trial counsel.  He further complains that Appellate Counsel failed to examine the record and research the law in a reasonable manner, failed to challenge the voluntariness of the guilty plea based on ineffective assistance of counsel, and failed to challenge on plain error grounds the Court's jurisdiction, the indictment, and the enhancement allegations.

Effective assistance of appellate counsel does not mean that counsel must raise every available non-frivolous ground for appeal.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.  The Supreme Court has never held that appellate counsel must follow his client's "instructions" as to what arguments are to be raised on appeal.

---

[3]*Anders v. California*, 386 U.S. 738 (1967).

It is well established in the Fifth Circuit that ineffective assistance of trial counsel claims generally are not considered for the first time by an appellate court because the record is not sufficiently developed. *See United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir. 1987). The Supreme Court has emphasized that a section 2255 motion is the preferred method for raising a claim of ineffective assistance of trial counsel as to federal convictions. *See Massaro v. United States*, 538 U.S. 500, 503 (2003). Consequently, Appellate Counsel in this case was not ineffective in failing to raise claims for ineffective assistance of trial counsel, as the trial record would not have supported such claims. Moreover, Defendant fails to demonstrate actual prejudice, as he was able to raise these claims in this section 2255 proceeding. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994) (finding that appellate counsel did not prejudice defendant by failing to raise meritless grounds for relief on appeal).

Nor does Defendant demonstrate that, but for Appellate Counsel's failure to raise Defendant's "plain error" claims, there is a reasonable probability that the result of the appeal would have been different. To any extent Defendant's plain error claims were not waived by his written plea agreement and his guilty plea made in open court, Defendant's assertions are conclusory, unsupported in the record, and provide no basis for habeas relief in this instance. Likewise, Defendant's bald assertions that Appellate Counsel failed to examine the record or research the law in a reasonable and sufficient manner are conclusory, unsupported in the record, and provide no basis for habeas relief in this instance.

To the extent Defendant complains that Appellate Counsel should have challenged the voluntariness of his guilty plea, he fails to establish that, had the issue been raised on direct appeal, it would have been sustained. That is, Defendant does not direct this Court to evidence appearing in the trial court record demonstrating that his plea was unknowingly or involuntarily made. His conclusory assertions, unsupported by the trial court record, are insufficient to show deficient performance or actual prejudice under *Strickland*, and habeas relief is unwarranted.

In all respects, Defendant's claims for ineffective assistance as to Appellate Counsel are without merit, and habeas relief under section 2255 is unwarranted.

### *Conclusion*

The Government's motion to deny relief (Docket Entry No. 139) is GRANTED and Defendant's section 2255 motion for relief (Docket Entry No. 121) is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED.

Civil Action No. H-16-2073 is ORDERED ADMINISTRATIVELY CLOSED.

Signed at Houston, Texas on October 16, 2017.

Gray H. Miller
United States District Judge